## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

SUPPERTIME, LLC and Daphne Schalau
        Plaintiffs,

v.

                                3:23-cv-46

FRANKFIELD MANAGEMENT, LLC and
Hugh Benjamin
        Defendants

_____/

## VERIFIED COMPLAINT

Suppertime, LLC, an Oregon limited liability company, states for its complaint:

### SUMMARY

The Plaintiff is the owner of real property known as Parcel No. 3-5 Remainder Estate Catherineberg, No. 19 Cruz Bay Quarter, St. John, VI, having Parcel Number 3-06201-0105-00 (the "Suppertime Property").

The Defendant is the owner of real property known as Parcel No. 3-5-A Estate Catherineberg, No. 19 Cruz Bay Quarter, St. John, VI, having Parcel Number 3-06201-0121-00 (the "Frankfield Property").

The Suppertime Property and Frankfield Property are located directly adjacent to each other. The Suppertime Property has a deeded access easement across the Frankfield Property. The Defendant has installed a lock on a gate which blocks the access easement. The Defendant has locked the mechanism to the gate so that the gate cannot be appropriately used by Suppertime – resulting in the blocking of the easement and preventing Suppertime from accessing their property.

Suppertime v. Frankfield Management
3:23-cv-46
Verified Complaint



*Figure 1: Map showing Suppertime Property, Frankfield Property, and installed gate which blocks access easement.*

## PARTIES

1. Suppertime, LLC ("Suppertime" or "Plaintiff") is an Oregon limited liability company, with a mailing address of 2270 NW Aviation, Suite 4 Roseburg, OR 97470 and the owner of the property known as Parcel No. 3-5 Remainder Estate Catherineberg, No. 19 Cruz Bay Quarter, St. John, VI, having Parcel Number 3-06201-0105-00 (the "Suppertime Property").

2. Suppertime has been registered in the U.S. Virgin Islands as a foreign limited liability company and given entity identifier FC0115758.

3. For purposes of establishing diversity jurisdiction all the members of Suppertime are:

    a. Daphne Schalau, who is a member, and a citizen of the state of Tennessee.

    b. Robert Schalau, who is a member, and a citizen of the state of Tennessee.

4. Frankfield Management, LLC ("Frankfield" or "Defendant") is a New York limited liability company, with a mailing address of 192 Tower Drive, Middletown, NY 10941 and the owner of the property known as Parcel No. 3-5-A Estate Catherineberg, No. 19 Cruz Bay Quarter, St. John, VI, having Parcel Number 3-06201-0121-00 (the "Frankfield Property").

Suppertime v. Frankfield Management
3:23-cv-46
Verified Complaint

5. For purposes of establishing diversity jurisdiction all the members of Frankfield, upon information and belief, are:

    a. Hugh Benjamin, who is a member, and a citizen of the state of New York with an address of 192 Tower Drive, Middletown, NY 10941.

    b. Michelle Benjamin, who is a member, and a citizen of the state of New York with an address of 192 Tower Drive, Middletown, NY 10941.

## JURISDICTION AND VENUE

6. This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the Plaintiff and the Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in the district of St. Thomas and St. John pursuant to 28 U.S.C. § 1391 as the Defendant is subject to jurisdiction of this Court, substantial parts of the acts and omissions occurred in this district, and the real property that is the subject of the action is situated in the district of St. Thomas and St. John.

8. Supplemental jurisdiction for Territorial law claims exists under 28 U.S.C. § 1367(a).

## FACTUAL BACKGROUND

9. In 1995 what now makes up Parcels 3-5-A and 3-5 Remainder Estate Catherineberg was a single parcel of land known as 3-5 Estate Catherineberg owned by Dennis DeMar, Katherine DeMar, Otis M. Cummins, III and Cheryl M. Cummins.

10. On July 3, 1995, two (2) partition deeds were simultaneously executed by Dennis DeMar, Katherine DeMar, Otis M. Cummins, III and Cheryl M. Cummins (collectively the "Partition Deeds").

11. The Partition Deeds resulted in 3-5 Estate Catherineberg being divided into the properties that presently exist – 3-5-A Estate Catherineberg[1], and 3-5 Remainder Estate Catherineberg[2].

12. The Partition Deeds contained reciprocal easement language granting an easement in perpetuity as follows:

    a. Partition Deed for 3-5 Remainder Estate Catherineberg:

    SUBJECT to an easement in perpetuity in favor of Parcel No. 3-5-A Estate Catherineberg, No. 19 Cruz Bay Quarter, St. John, U.S. Virgin Islands, for purposes of driveway, ingress and egress over and across Parcel Remainder No. 3- 5 Estate Catherineberg, No. 19 Cruz Bay Quarter, St. John, U.S. Virgin Islands, and the installation of underground electrical, television and telephone utilities, which easement is located and described as "Easement B" on the Resurvey and

---

[1] Currently owned by Frankfield Management, LLC.
[2] Currently owned by Suppertime, LLC.

Subdivision Map prepared by Gibney, Gray and Associates surveyors, dated 3-13-95, which map is attached hereto as Exhibit A and incorporated herein by reference. This easement shall run with the land. All costs for construction and maintenance of this easement shall be shared by the owners of Parcel Remainder No. 3-5 Estate Catherineberg and Parcel No. 3-5-A Estate Catherineberg, although the owner of Parcel No. 3-5-A Estate Catherineberg shall only be obliged to contribute fifty percent ( 50%) of the costs for that portion of "Easement B" as is actually used by said owner.

b.  Partition Deed for 3-5-A Estate Catherineberg:

SUBJECT to an easement in perpetuity in favor of Parcel Remainder No. 3-5 Estate Catherineberg[3], No. 19 Cruz Bay Quarter, St. John, U.S. Virgin Islands, for purposes of ingress and egress over and across Parcel No. 3-5-A Estate Catherineberg, No. 19 Cruz Bay Quarter, St. John, U.S. Virgin Islands, and the installation of underground electrical, television and telephone utilities, which easement is located and described as "Easement A" on the Resurvey and Subdivision Map prepared by Gibney, Gray and Associates surveyors, dated 3-13-95, which map is attached hereto as Exhibit A and incorporated herein by reference. This easement shall run with the land. All costs for construction and maintenance of this easement shall be shared equally by the owners of Parcel Remainder No. 3-5 Estate Catherineberg and Parcel No. 3-5-A Estate Catherineberg.

13. The easements contained in the Partition Deeds 'run with the land' – the easements remain with the property even after being transferred.[4]

14. Frankfield obtained ownership to Parcel No. 3-5-A Estate Catherineberg by warranty deed recorded on August 31, 2011, as document # 2011006479.

15. Frankfield paid at least One Million Three Hundred Thousand and 00/100 Dollars ($1,300,000.00) for 3-5-A Estate Catherineberg.

16. Suppertime obtained ownership to Parcel No. 3-5 Remainder Estate Catherineberg by warranty deed recorded on September 9, 2021, as document # 2021005721.

17. Suppertime paid at least Four Million and 00/100 Dollars ($4,000,000.00) for 3-5 Remainder Estate Catherineberg.

18. The reciprocal easements contained in the Partition Deeds were passed to Frankfield and Suppertime by operation of law when Frankfield and Suppertime received ownership of the respective parcels of land via warranty deed.

---

[3] "Parcel Remainder No. 3-5 Estate Catherineberg" and "Parcel No. 3-5 Remainder Estate Catherineberg" are interchangeable legal descriptions for the same piece of real property.
[4] https://www.law.cornell.edu/wex/running_with_the_land

Suppertime v. Frankfield Management
3:23-cv-46
Verified Complaint

19. A gate is installed directly adjacent to John Head Road, at the 'beginning' of the easement. *See Figure 1 above.*

20. The installation of the gate blocked the deeded access easement to Parcel No. 3-5 Remainder Estate Catherineberg, which is owned by Suppertime.

21. Any individuals seeking to access the Suppertime property are required to go through the gate, there is no other access to the Suppertime property.

22. The operating mechanism of the gate frequently fails to work properly.

23. In order to manually open the gate when the operating mechanism fails, the cover to the operating mechanism must be removed and the chain removed from the operating mechanism in order to manually open the gate.

24. Frankfield has installed a padlock on the gate operating mechanism cover so that Suppertime is unable to properly operate the gate in order to access Suppertime's property.



*Operatiing mechanism cover with padlock on lower right hand side*

25. As recently as August 30, 2023, Frankfield, through its members Michelle and Hugh Benjamin, emailed Suppertime and accused Suppertime of trespassing on the Frankfield

Suppertime v. Frankfield Management
3:23-cv-46
Verified Complaint

property.

26. Any claim of trespassing is meritless as there is a deeded access easement in favor of the Suppertime property.

27. On August 11, 2023, when Suppertime member Daphne Schalau was inspecting the locked gate mechanism in order to try to figure out how to operate the gate and gain access to the Suppertime property, Frankfield member Hugh Benjamin yelled at Mrs. Schalau and became aggressive, putting Mrs. Schalau in fear for her physical safety.

28. On August 11, 2023, Mr. Benjamin also told Mrs. Schalau that the gate belonged to Frankfield and that Mrs. Schalau should not touch the gate.

29. The position now taken by Frankfield is:

   a. that the gate belongs to Frankfield,

   b. that the use of the easement by Suppertime is 'trespassing',

   c. that Frankfield may lock the gate and cause any individuals staying at the Suppertime property to be trapped, or excluding individuals from the Suppertime property, and

   d. that Frankfield may block access to the Suppertime property from anyone for any reason – including emergency services personnel.

30. Robert Schalau, a member of Suppertime, regularly stays at the Suppertime property, Mr. Schalau has recently had medical emergencies that could require emergency medical services to come to the Suppertime property.  Since Frankfield has blocked access to the Suppertime property the exclusion of medical personnel could result in serious physical harm to Mr. Schalau.

Suppertime v. Frankfield Management
3:23-cv-46
Verified Complaint

## COUNT 1 – Declaratory Relief[5]

31. The Plaintiff repeats and realleges all the foregoing paragraphs as though fully set forth herein.

32. There presently exists a substantial controversy between the Plaintiff and Defendant.

33. The Plaintiff and Defendant have adverse legal interests, of sufficient immediacy and reality for this court to issue a declaratory judgment.

34. Particularly, the Defendant's exclusion of the Plaintiff from the use of the deeded access easement resulting in the exclusion of the Plaintiff from the Plaintiff's property or alternatively the trapping of Plaintiff on Plaintiff's property.

35. If the Defendant is permitted to continue to exclude the Plaintiff from its property the Plaintiff will continue to be harmed – that harm will result in both financial harm, as well as irreparable harm, and possibly physical harm to individuals staying at the Plaintiff's property..

36. Plaintiff's rights, status, and other legal relations have been and will be affected by Defendant's continued actions excluding Plaintiff from its property.

37. Plaintiff is entitled to a declaratory judgment (1) declaring that access easements contained in the Partition Deeds 'run with the land', (2) enjoining Defendants from restricting the Plaintiff's access to their property in any manner, (3) ordering a removal of the gate, or (4) alternatively ordering that Plaintiff's shall have unhindered access to the operation of the gate in order to access Plaintiff's property.

---

[5] The Declaratory Judgment Act allows that, "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The 'actual controversy' requirement in the Act reflects "Article III's limitation of federal courts' jurisdiction to 'Cases' and 'Controversies.' " *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 120 (2007).[4] The Supreme Court has acknowledged that it has "not draw[n] the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not." *Id.* at 127. Generally, however, appropriate disputes under the Declaratory Judgment Act must "be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that [they] be 'real and substantial' and 'admi[t] of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " *Id.* (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

*The W. Indian Co. Ltd. v. Yacht Haven USVI, LLC*, No. 3:20-CV-0011, 2022 WL 819453, at *7 (D.V.I. Mar. 17, 2022)

Michael L. Sheesley, P.C.
PO Box 307728, St. Thomas, VI 00803

Suppertime v. Frankfield Management
3:23-cv-46
Verified Complaint

38. A declaratory judgment by this court, as requested by Plaintiff, will serve a useful purpose and help resolve a controversy between the parties.

## COUNT 2 – Private Nuisance[6]

39. The Plaintiff repeats and realleges all the foregoing paragraphs as though fully set forth herein.

40. The Plaintiff is entitled to the use and enjoyment of the property owned by the Plaintiff.

41. The Defendant has invaded and disturbed Plaintiff's use of its property by refusing to permit Plaintiff to access its property.

42. The actions, or inactions, by Defendant has actually harmed Plaintiff and negatively impacted Plaintiff's use and enjoyment of Plaintiff's property.

43. The Defendant is aware of and has acknowledged the exclusion of Plaintiff from its property – the Defendant has even threatened the members of the Plaintiff.

44. The Defendant is aware of and has acknowledged the harm caused to Plaintiff by the exclusion of Plaintiff from its property.

45. As a result of the actions, or inactions of Defendant, Plaintiff has been damaged in an amount and character to be determined at trial but is entitled to compensatory damages, incidental damages, consequential damages, special damages as well as for all costs, expenses, attorneys' fees, and interest.

---

[6] In *Bermudez v. Virgin Islands Telephone Corporation*, 54 V.I. 174, 180–93 (Super.Ct.2011), the Superior Court thoroughly analyzed the public nuisance doctrine in the Virgin Islands. A private nuisance in this jurisdiction, the *Bermudez* court concluded, "is an invasion of another's interest in the private use and enjoyment of land." *Bermudez,* 54 V.I. at 193 (quoting Restatements (Second) of Torts § 821D); *accord Bluebeard's Castle, Inc.*, 44 V.I. at 252; *Torres,* 13 V.I. at 455. Additionally, that invasion "must cause significant harm ... involving more than slight inconvenience or petty annoyance." *Bermudez,* 54 V.I. at 193.

*Bell v. Radcliffe*, No. ST-13-CV-392, 2015 WL 5773561, at *9 (V.I. Super. Ct. Apr. 30, 2015) (footnote omitted).

"A private nuisance is a "nontresspassory invasion of another's interest in the private use and enjoyment of land." Restatement (Second) of Torts § 821D (1977) (hereinafter "Restatement"). It is "private" because the interference is with "a use of land that a person is privileged to make as an individual, and not as a member of the public." Restatement § 821D, cmt. c. It includes interferences with private easements…." *Hodge v. Bluebeard's Castle, Inc.,* 44 V.I. 242, 252 (Terr. V.I. 2002).

Michael L. Sheesley, P.C.
PO Box 307728, St. Thomas, VI 00803

Suppertime v. Frankfield Management
3:23-cv-46
Verified Complaint

## **COUNT 3 – Civil Assault by Hugh Benjamin against Daphne Schalau**

46. The foregoing paragraphs are repeated and realleged as though fully set forth herein.

47. Hugh Benjamin acted with the intention of causing a harmful or offensive contact with Daphne Schalau, or an imminent apprehension of such a contact.

48. Daphne Schalau was put in imminent apprehension of the harmful and offensive contact from Hugh Benjamin.

49. Hugh Benjamin's actions of civilly assaulting Daphne Schalau were malicious, intentional, outrageous, and outside the bounds of a civilized society.

50. Defendant Hugh Benjamin is liable to Plaintiff Daphne Schalau for compensatory, incidental, special, consequential, and punitive damages, as well as for all costs, expenses, attorneys' fees, and interest.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully demands judgment be entered in favor of Plaintiff and against Defendant, and that Plaintiff be awarded the following:

a. For compensatory damages, incidental damages, consequential damages, special damages in an amount in excess of $75,000.00;

b. Statutory interest;

c. Attorney's fees and costs;

d. Declaratory judgment (1) declaring that access easements contained in the Partition Deeds 'run with the land', (2) enjoining Defendants from restricting the Plaintiff's access to their property in any manner, (3) ordering a removal of the gate, or (4) alternatively ordering that Plaintiff's shall have unhindered access to the operation of the gate in order to access Plaintiff's property.

e. Injunctive relief as requested in the motion for preliminary and permanent injunction

f. Any other relief deemed appropriate.

Suppertime v. Frankfield Management
3:23-cv-46
Verified Complaint

Pursuant to *Fed. R. Civ. P. 38* Plaintiff demands a trial by jury on all matters.

Respectfully submitted,
**Michael L. Sheesley, P.C.**

Dated: October 10, 2023

s/Michael L. Sheesley
Michael Sheesley
V.I. Bar No. 1010
P.O. Box 307728
St. Thomas, VI 00803
(412)972-0412
michael@sheesley-law.com

## VERIFICATION

Daphne Schalau as an authorized member of Suppertime, LLC, pursuant to *V.I.R.Civ.P. 84* and *28 U.S.C. 1746,* being first duly sworn, states that she has read the foregoing Complaint; that she is familiar with the contents thereof; and she declares under the penalty of perjury that the facts stated therein are true and correct.

DATED: _10 Oct 2023_

Daphne Schalau, authorized member of
Suppertime, LLC