IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| SUPPERTIME, LLC and DAPHNE SCHALAU, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) CASE NO. 3:23-cv-00046 |
| | ) |
| FRANKFIELD MANAGEMENT, LLC and HUGH BENJAMIN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION and ORDER

Before the Court are two motions by Plaintiffs Suppertime, LLC and Daphne Schalau (collectively, "Suppertime") to amend their complaint. [ECFs 88 & 107]. Also before the Court is Defendants Frankfield Management, LLC and Hugh Benjamin's (collectively, "Frankfield") motion to amend their answer and counterclaim. [ECF 108]. For the reasons set forth below, the Court will deny Suppertime's first motion [ECF 88] as moot, grant in part and deny in part Suppertime's second motion [ECF 107], and grant in part and deny in part Frankfield's motion [ECF 108].

### I.  BACKGROUND

Suppertime filed this action on October 10, 2023, alleging claims relating to an access easement. [ECF 1]. The parties own adjacent properties on St. John, with Suppertime having deeded easement access across the Frankfield property. *See id.* The complaint alleges Frankfield installed a lock on a gate which prevents Suppertime from accessing its property and that Benjamin yelled at Schalau to not touch the gate. *Id.* at 5–6. As a result, Suppertime brought claims for declaratory relief, private nuisance, and civil assault. *Id.* at 7–9. Frankfield answered the complaint on March 5, 2024, stating nine affirmative defenses and three counterclaims for declaratory relief, private nuisance, and debt. [ECF 18].

1

On April 11, 2024, after a scheduling conference with the parties, the Court entered a Trial Management Order which set a deadline of June 15, 2024 to seek to amend pleadings, a fact discovery deadline of September 13, 2024, and other deadlines for expert disclosures and discovery. [ECF 53]. Following a July 11, 2024 status conference, the Court granted Suppertime's motion to compel a survey of the easement. [ECF 72]. In doing so, the Court noted that Suppertime averred it needed the survey to prepare for mediation, and that it would not impose any burden on Frankfield or their property. *Id.* at 1–2. The Court thus permitted the survey, finding it would "not impact the Court's schedule in this case." *Id.* at 2.

On September 2, 2024, Suppertime moved to amend its complaint to add three counts for trespass. [ECF 88]. Frankfield opposes the motion, contending Suppertime acted with bad faith because the trespass claims are "factually unfounded" and "deliberately misleading." [ECF 97] at 1, 3–5. Additionally, Frankfield argues the amendment is futile because Suppertime fails to sufficiently allege a trespass by Frankfield, and further is barred by the statute of limitations. *Id.* at 5–6.

On November 4, 2024, Suppertime filed a second motion to amend the complaint, wherein it seeks to add three additional counts for declaratory judgment, negligent infliction of emotional distress, and intentional infliction of emotional distress. [ECF 107]. Although the motion states that Frankfield objects to these proposed amendments as well, *see* [ECF 107] at 2, Frankfield has not filed an opposition, and the time to do so has expired.

On November 5, 2024, Frankfield moved to amend its answer and counterclaim, wherein it seeks to add four affirmative defenses: defense of property, lack of intent, Suppertime's actions and/or omissions bar recovery, and waiver. [ECF 108]. The motion further seeks to add counterclaims for adverse possession, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent trespass, intentional trespass, and breach of easement.

2

*Id.* at 1.[1] Suppertime opposes the amendment, arguing Frankfield fails to explain why the proposed affirmative defenses have any merit and why it could not assert them earlier. [ECF 109] at 6–7. Suppertime next contends the proposed counterclaims for negligent and intentional infliction of emotional distress are futile because "there is no cause of action based on 'microaggressions and racial bias,'" and further argues it will have to expend "significant additional resources" to defend against such claims at trial. *Id.* at 4. Lastly, Suppertime argues the adverse possession and trespass claims are without factual support. *Id.* at 3, 6.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend pleadings should be freely given when justice so requires. *See Katzenmoyer v. City of Reading*, 158 F. Supp. 2d 491, 497 (E.D. Pa. 2001) (the movant "has the burden of showing that justice requires the amendment"); *In re Engle Cases*, 767 F.3d 1082, 1119 n.37 (11th Cir. 2014) ("The party seeking leave to amend under Rule 15 bears the burden of establishing his entitlement to it."). Nonetheless, the policy favoring liberal amendments is not "unbounded." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990). "[A] district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005); *see Foman v. Davis*, 371 U.S. 178, 182 (1962). A court may also "ground its decision . . . on consideration of additional equities, such as judicial economy/burden on the court and the prejudice denying leave to amend would cause to the [movant]." *Mullin v. Balicki*, 875 F.3d 140, 149–50 (3d Cir. 2017).

---

[1] As will be addressed later in this Memorandum Opinion and Order, Frankfield failed to include a breach of easement cause of action in its "redlined" version of the proposed amended answer and counterclaims, though it did provide said claim in the "clean" version of the proposed pleading. Pursuant to LRCi 15.1, all changes or additions to the proposed pleading are to be delineated in the redlined version of the document.

3

Furthermore, "when a party moves to amend . . . after the deadline in a district court's scheduling order has passed, the 'good cause' standard of [Fed. R. Civ. P.] 16(b)(4) . . . applies. A party must meet this standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard." *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020). Whether the requisite good cause exists "depends in part on a plaintiff's diligence." *Id.* Thus, where a movant fails to meet its burden under Rule 16(b)(4) to show that, despite its diligence, it could not meet the court's scheduling order, the court need not determine whether the movant meets Rule 15(a)'s requirements. *See, e.g.*, *Barry v. Stryker Corp.*, 2022 WL 16948625, at *3–4 (D. Del. Nov. 15, 2022) (citing *Premier Comp Sols.*, 970 F.3d at 319).

"In the Third Circuit, delay alone does not justify denying a motion to amend." *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 225 (E.D. Pa. 2012) (citing *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)). Rather, the delay must either be undue, such that it places "an unwarranted burden on the court," or it must be prejudicial, such that it places "an unfair burden on the opposing party." *Id.* (quoting *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)). "Implicit in the concept of 'undue delay' is the premise that Plaintiffs, in the exercise of due diligence, could have sought relief from the court earlier." *Id.* (citation omitted). Thus, in determining whether delay is undue, a court must "focus on the movant's reasons for not amending sooner." *Cureton*, 252 F.3d at 273. This "includes consideration of whether new information came to light or was available earlier to the moving party," and whether the "movant has had previous opportunities to amend." *Williams v. Cost-U-Less, Inc.*, 2014 WL 2993667, at *4 (D.V.I. July 3, 2014) (first quoting *In re Adams Golf, Inc. Secs. Litig.*, 381 F.3d 267, 280 (3d Cir. 2004); and then quoting *Cureton*, 252 F.3d at 273). Additionally, "[t]actical decisions and dilatory motives may lead to a finding of undue delay." *Synthes*, 281 F.R.D. at 225 (citation omitted). Accordingly, in assessing delay, the court must balance any imposition or prejudice caused by the delay against

4

the movant's reasons for the delay. *Id.* at 225–26 (citing *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 520 (3d Cir. 1988)).

The factors of bad faith and dilatory motive involve similar considerations. Like undue delay, the question of bad faith requires the court to "focus on the plaintiffs' motives for not amending their complaint to assert th[e] claim earlier." *Adams*, 739 F.2d at 868. However, "[t]he scope of the court's inquiry is . . . limited to whether the motion to amend *itself* is being made in bad faith, not whether . . . conduct outside the motion to amend amounts to bad faith." *Trueposition, Inc. v. Allen Telecom, Inc.*, 2002 WL 1558531, at *2 (D. Del. July 16, 2002) (citing *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 614 (3d Cir. 1987)). Additionally, "delay can itself be evidence of bad faith justifying denial of leave to amend." *Adams*, 739 F.2d at 868. Similarly, "[a] finding of dilatory motive is justified where the plaintiff acts 'in an effort to prolong litigation.'" *Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp.*, 123 F. Supp. 3d 638, 653 (E.D. Pa. 2015) (citation omitted), *aff'd*, 823 F.3d 184 (3d Cir. 2016). "Such efforts are apparent when the motion attempts to plead additional information that was previously available, and the plaintiff fails to provide an explanation as to why the information was not included in the original complaint." *Id.*[2]

"'Futility' means that the [pleading], as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Thus, "[i]n assessing 'futility,' the District Court applies the same standard of legal sufficiency as [it] applies under [Fed. R. Civ. P.] 12(b)(6)." *Id.* In other words, the court must determine whether the pleading includes "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

---

[2] *See, e.g.*, *Breyer v. Meissner*, 23 F. Supp. 2d 540, 543 (E.D. Pa. 1998) (finding plaintiff acted with dilatory motive seeking to delay immigration proceedings, where plaintiff could have brought claims sooner but instead parceled them out in amended and proposed petitions), *aff'd*, 214 F.3d 416 (3d Cir. 2000); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 141 (5th Cir. 1993) (affirming district court's finding of bad faith and dilatory motive, where plaintiffs were aware of facts supporting claims before they filed suit, but did not move for leave to amend until defendant filed for summary judgment).

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In making this determination, the court takes all pleaded allegations as true and views them in the light most favorable to the movant. *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010). If the proposed amendment "clearly is frivolous, advancing a claim or defense that is legally insufficient on its face," the amendment should be denied. 6 Wright & Miller, *Federal Practice & Procedure* § 1487 (3d ed., June 2024 update). "If a proposed amendment is not clearly futile, then denial of leave to amend is improper." *Id.*

"[P]rejudice to the non-moving party is the touchstone for the denial of an amendment," and such prejudice must be substantial or undue. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (quoting *Cornell & Co. v. Occupational Safety & Health Rev. Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)). Thus, the opposing party "must do more than merely claim prejudice; 'it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely.'" *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (citation omitted). Courts evaluate prejudice "by looking at whether the amendment would: (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the non-moving party from bringing a timely action in another forum." *Debjo Sales, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 2017 WL 4404565, at *2 (D.N.J. Oct. 4, 2017); *see Cureton*, 252 F.3d at 273 (a court should consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories").

Ultimately, whether to grant leave to amend lies within a court's discretion. *Pa. Emps. Ben. Tr. Fund v. Zeneca, Inc.*, 499 F.3d 239, 252 (3d Cir. 2007).

## III.  DISCUSSION

As an initial matter, neither party attempts to demonstrate the requisite good cause for their late filings. Nevertheless, the Court cannot find that either party has acted with undue delay, bad faith, or dilatory motives in seeking leave to amend.[3] Although certain claims and defenses could have been raised earlier, the parties sought an early mediation in an effort to resolve this dispute, and when that effort failed, moved forward with discovery. Additionally, both parties moved to amend shortly after receiving the surveys that form part of the factual bases for the proffered amendments.

Nor does the Court find that either party will be prejudiced should the amendments be permitted.[4] As the Third Circuit has noted, substantial or undue "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Lorenz*, 1 F.3d at 1414 (quoting *Cornell & Co.*, 573 F.2d at 823). While it is true that the fact discovery deadline expired on September 13, 2024, the parties proceeded with depositions after that date, and the Court indicated at a January 16, 2025 status conference that it would extend fact discovery at least until March 31, 2025. [ECF 127]. Given the procedural posture of this matter, and considering that the Court has already indicated it will extend the schedule for this litigation, the Court finds that any prejudice on either party at this junction is negligible.

---

[3] The Court is not persuaded by Frankfield's argument that Suppertime's motion to amend to add the claims for trespass is motivated by bad faith. *See* [ECF 97] at 3–5. Frankfield contends the Schalaus were aware of the gate and retaining wall and their location within the easement when the Schalaus purchased the Suppertime property, and "cannot now feign ignorance of these conditions and drag Defendants into further litigation." *Id.* at 4–5. Frankfield, however, seeks to assert its own trespass claims in the proposed amended counterclaims, which will equally expand this litigation.

[4] Suppertime's argument on this point rings particularly hollow: Suppertime contends it will suffer prejudice if Frankfield's intentional and negligent infliction of emotional distress counterclaims are permitted because fact discovery is closed, and Suppertime would have to expend "significant additional resources" to defend against the claims at trial. [ECF 109] at 4. But Suppertime filed its own motion to amend seeking leave to add the same claims just one day before Frankfield filed its motion. Moreover, at an October 8, 2024 status conference, the parties averred they were working on a joint motion to extend discovery and other deadlines. The same arguments Suppertime urges regarding prejudice if the Court were to grant Frankfield's motion would also result in a finding of prejudice to Frankfield if the Court were to grant Suppertime's motions.

The Court will next address the parties' arguments as to futility.

## A. Futility of the Proffered Claims and Counterclaims

### i. Trespass

Suppertime seeks leave to add three claims for trespass, while Frankfield seeks to add counterclaims for intentional trespass and negligent trespass. To state a claim for trespass under Virgin Islands law, a plaintiff must allege "that the defendant intentionally (a) entered land in the possession of the other, or caused a thing or a third person to do so, or (b) remained on the land, or (c) failed to remove from the land a thing which he was under a duty to remove." *Klein v. Bassil*, 78 V.I. 593, 610 (2023).[5]

In Counts 4 and 5 of its proposed first amended complaint ("FAC"), Suppertime alleges: (1) it is entitled to full use of the deeded easement, (2) the gate, walls, and other structures impermissibly narrow the easement, (3) Frankfield has a duty to remove these structures, and (4) Frankfield's actions/inactions caused Suppertime damages. [ECF 88–2] ¶¶ 58–72. Count 6 of the proposed FAC alleges: (1) Frankfield built a fence on Suppertime's property, (2) Frankfield has a duty to remove the fence, and (3) by Frankfield's failure to do so, Suppertime suffered damages. *Id*. ¶¶ 73–78. Thus, Counts 4, 5, and 6 appear to sufficiently state a claim for trespass. Frankfield's arguments go to the merits of the trespass claims, and although Suppertime may not ultimately prevail, the Court cannot say at this juncture that leave to amend should be denied.

In Count VIII of the proposed amended counterclaim, Frankfield alleges: (1) Suppertime built or has permitted to remain a stone structure on Easement B, (2) the structure interferes with Frankfield's right to Easement B, (3) Suppertime has a duty to remove the structure, and (4) the infringement caused Frankfield damages. [ECF 108–1] ¶¶ 95–98. Suppertime does not argue

---

[5] Suppertime relies on case law from Ohio, Georgia, Indiana, and Michigan to argue that encroachment of an easement is an actionable claim for trespass. *See* [ECF 88] at 3–5. Frankfield does not argue to the contrary. The Court assumes for purposes of the instant motions that the Virgin Islands would recognize such a cause of action.

futility, and the Court finds that the proposed amended counterclaim sufficiently pleads a claim for intentional trespass. Frankfield also seeks to add a claim for negligent trespass in Count VII of the proposed amended counterclaim. *Id*. ¶¶ 89–94. While *Klein* did not separately address negligent trespass, "the Superior Court of the Virgin Islands has recognized Negligent Trespass as a cause of action distinct from Intentional Trespass." *Boynes v. Limetree Bay Ventures, LLC*, 2023 WL 3166603, at *7 (D.V.I. Apr. 28, 2023), *aff'd*, 110 F.4th 604 (3d Cir. 2024). To state a claim for negligent trespass, a plaintiff "must allege that [d]efendants (1) recklessly, negligently, or as a result of an abnormally dangerous activity; (2) entered or caused a thing or third person to enter land of another; and (3) harm caused by his presence or the presence of the thing or the third person upon the land." *Alleyne v. Diageo USVI, Inc.*, 63 V.I. 384, 418 (Super. Ct. 2015). Frankfield's proffered claim for negligent trespass is substantially identical to its claim for intentional trespass, differing only in respect to whether Suppertime acted willfully and intentionally, or negligently and carelessly. As such, the Court finds that the proposed amended counterclaim sufficiently pleads a claim for negligent trespass.

### ii. Negligent or Intentional Infliction of Emotional Distress

Currently, there are no Virgin Islands laws or rules which recognize the common law causes of action for negligent or intentional infliction of emotional distress. *Aaron v. V.I. Gov't Hosp. & Health Facilities Corp.*, 2021 WL 3291750, *7–8 (V.I. Super. Mar. 8, 2021); *Ainger v. Great Am. Assurance Co.*, 2022 WL 4379794, *17 (D.V.I. Sept. 22, 2022); *see also Williams v. Flat Cay Mgmt., LLC*, 2023 WL 2563193, *10 (D.V.I. Mar. 17, 2023). Nor has the Virgin Islands Supreme Court conducted *Banks* analyses[6] that recognize either claim. *Aaron*, 2021 WL 3291750

---

[6] The common law of the Virgin Islands has undergone a significant transformation since the Virgin Islands Supreme Court issued its opinion in *Banks v. Int'l Rental & Leasing Corp.*, 2011 WL 6299025 (V.I. 2011). *See Merch. Com. Bank v. Oceanside Vill., Inc.*, 2015 WL 9855658, *2 (V.I. Super. Dec. 18, 2015). In *Banks*, it was determined that the Virgin Islands no longer derives principles of common law through rote application of the Restatements of the Law. *Id*. Instead, to the extent that the Virgin Islands Supreme Court has yet to do so, all courts addressing issues of Virgin Islands common law are required to engage in a three-factor analysis to determine whether the common law principle

at *7–8. Both causes of action have been recognized, however, by the Superior Court of the Virgin Islands ("Superior Court"), as well as by this Court.

With respect to a claim for negligent infliction of emotional distress, the Superior Court, after conducting a *Banks* analysis, concluded in *Donastorg v. Daily News Publ'g Co., Inc.*, 2015 WL 5399263 (V.I. Super. Aug. 19, 2015) that

> [T]o prevail on a claim of negligent infliction of emotional distress under a theory that the plaintiff was the direct victim of a defendant's negligent conduct, a plaintiff must prove: (1) that the defendant owed the plaintiff a duty of care to ensure the plaintiff does not suffer serious or severe emotional injury, which duty either arose by contract or was imposed as an independent legal obligation; (2) that the defendant breached its contractual or legal obligation, i.e. its duty; and (3) that, as a direct and proximate result of defendant's breach, the plaintiff suffered a serious or severe emotional injury.

*Id*. at *57; *See Aaron*, 2021 WL 3291750 at *8; *see Ainger*, 2022 WL 4379794 at *17; *see also Diaz v. Ramsden*, 2016 WL 5475994, *6–7 (V.I. Super. Sept. 22, 2016) (not for publication).

As for intentional infliction of emotional distress, the Superior Court, after conducting a *Banks* analysis, concluded in *FirstBank of Puerto Rico v. Prosser*, 2015 WL 13579241 (V.I. Super. June 22, 2015) that the Restatement (Second) of Tort § 46 provides the applicable standard for such a claim. *Id*. at *4; *see Williams*, 2023 WL 2563193 at *10. In *Prosser*, the court provides that

> Under section 46, the tort of intentional infliction of emotional distress is committed when "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another. ..." Restatement (Second) of Torts, § 46; *see also Moolenaar v. Atlas Motor Inns, Inc.*, 616 F.2d 87, 17 V.I. 623 (3d Cir. 1980). The actor's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Restatement (Second) of Torts, § 46, comment d.

---

is applicable in the Territory and if so, the standard to be adopted. This exercise is known as a "*Banks* analysis." *Id*. Under *Banks*, the Court must first examine which common law rule Virgin Islands courts have applied in the past; next identifying the rule adopted by a majority of courts of other jurisdictions; and then finally determining which common law rule is soundest for the Virgin Islands. *See Better Bldg. Maint. of the V.I., Inc. v. Lee*, 2014 WL 1491559, *7 (V.I. 2014).

*Prosser*, 2015 WL 13579241 at *4.

Turning first to the negligent infliction of emotional distress claims, Suppertime's proposed SAC alleges that Benjamin, along with Michelle Benjamin, have accused Schalau of being a "racist." [ECF 107–2] ¶ 44. The proposed SAC further alleges that these false accusations were made with an "evil motive" and were made with the intent of damaging Schalau personally and professionally, as well as with the intent to force Suppertime to abandon their legitimate legal claims. *Id*. ¶¶ 44–46. The proposed amended counterclaim of Frankfield, on the other hand, alleges that Schalau has persistently engaged in a "pattern of deliberate and malicious behavior" directed at Benjamin. [ECF 108–1] ¶ 41. The amended counterclaim further alleges that Schalau has engaged in "hostile interactions" with Benjamin, making "belittling and demeaning remarks" in front of others over Benjamin's "reasonable requests" that Schalau stop. *Id*. ¶ 42. Additional allegations are that Schalau has repeatedly stated that everything Benjamin, his wife, or Frankfield does is her business, that she has threatened to make Benjamin spend all of his money on legal fees, and has attempted to provoke Benjamin to make physical contact. *Id*. ¶ 43. Lastly, it is alleged Schalau has unreasonably "hovered" over Frankfield's construction project and that her behavior has been marked by "microaggressions and racial bias." *Id*. ¶¶ 44–45.

Negligent infliction of emotional distress is not a lesser-included offense of intentional infliction of emotional distress, but is instead a different tort. *Aaron*, 2021 WL 3291750 at *9 (citing *Arnos v. Hess Corp.*, 2019 WL 5295588, *22 (V.I. Super. Oct. 17, 2019). Both the proposed amended SAC, [ECF 107–2] ¶¶ 93–94, and the proposed amended counterclaim, [ECF 108–1] ¶¶ 84–85, allege that the other had a legal duty of care which was breached and that these duties were imposed as an independent legal obligation. Neither party, however, alleges how the purported duties were imposed by independent legal obligations or what these independent legal obligations are. It is well settled that legal conclusions, couched as factual allegations, are not entitled to the

assumption of truth. *Iqbal*, 129 S.Ct. at 1949-50. Accordingly, the Court will deny each parties' respective motions that seek to assert a cause of action for negligent infliction of emotional distress.[7]

As for the parties' factual allegations associated with their respective intentional infliction of emotional distress claims, these are identical to their factual allegations of negligent infliction of emotional distress claims. In Suppertime's proposed amended SAC, it is alleged that Benjamin has accused Schalau of being a racist. [ECF 107–2] ¶ 44. As noted earlier, Frankfield has not filed an opposition to Suppertime's proposed SAC—which is the proposed pleading that seeks to assert a cause of action for intentional infliction of emotional distress—and the Court finds that leave to amend is warranted as to this claim.

With respect to Frankfield, its allegations of intentional infliction of emotional distress allege "hostile interactions" and "belittling and demeaning remarks" purportedly made towards Benjamin. [ECF 108–1] ¶ 42. Liability for intentional infliction of emotional distress, however, does not ordinarily extend to mere insults or indignities. *See Nino v. Jewelry Exch.*, 2008 WL 5272520, *2 (D.V.I. Dec. 16, 2008). Accordingly, the Court finds the above allegations are insufficient to assert such a claim. Nor are the allegations that Schalau has made repeated statements regarding the doings of Frankfield being "her business" and her purported threats of increasing legal expenses sufficient.[8] The Court notes there have been no allegations that Schalau stated she would be asserting frivolous claims for this purpose. Likewise, the allegations that

---

[7] While Suppertime's second motion to amend [ECF 107]—which, in part, seeks to assert a negligent infliction of emotional distress claim—is unopposed, the Court finds that there is substantial reason to deny the motion as to this cause of action for the reasons set forth above.

[8] *See Clark v. Caln Twp.*, 1990 WL 99123 (E.D. Pa. July 11, 1990) ("Although the threats may have been made in bad faith, defendants were certainly entitled to pursue legal action they believed was in their interests. When an individual does no more than insist on his legal rights in a permissible way, he will not be held liable for intentional infliction of emotional distress, even though he is aware that such insistence will cause emotional distress. *Id*. at *5 (citing Restatement (Second) of Torts § 46, comment g).

Schalau has "unreasonably hovered" over Frankfield's construction project and that her behavior towards both Benjamin and his wife has been "marked by microaggressions and racial bias," is likewise insufficient.[9] This is because the proposed amendment is void of any allegations of overt racist words, gestures, conduct, or threats, s*ee Kee v. Camden Cnty.*, 2006 WL 2827733, *6 (D.N.J. Sept. 28, 2006), with the allegations made constituting nothing more than "labels and conclusions." *Iqbal*, 129 S.Ct. at 1949. The Court does, however, find the allegation concerning the purported attempt to provoke a physical contact for purposes of filing a separate lawsuit, [ECF 108–1] ¶ 43, sufficient to permit leave to amend the counterclaim to assert a cause of action for intentional infliction of emotional distress given the liberal standard of Rule 15(a)(2).

### iii. Adverse Possession

The required elements for a claim of adverse possession are set forth in the Virgin Islands Code, which provides that "[t]he uninterrupted, exclusive, actual, physical adverse, continuous, notorious possession of real property under claim or color of title for 15 years or more shall be conclusively presumed to give title thereto." 28 V.I.C. § 11; *see Moses v. Lake*, 2023 WL 4546242, at *4 (D.V.I. July 14, 2023); *Alvarez v. Est. of Keel*, 73 V.I. 538, ¶ 10 (2020); *Mahabir v. Heirs of George*, 63 V.I. 651, 658 (2015).

Here, Count IV of the proposed amended counterclaim alleges (1) "Frankfield and its predecessors-in-interest have exclusively used and maintained the [gate and stone retaining walls and other] structures within Easement A"; (2) these structures "have been visibly present, hostile, openly used, obvious and maintained over the statutory period, beginning with the DeMars, and continuing without interruption through Frankfield's ownership of the Frankfield Property";[10] and

---

[9] Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See Iqbal*, 129 S.Ct. at 1949.

[10] According to Frankfield's proposed amended counterclaim, "in the late 1990s, the DeMarses constructed certain stone retaining walls and other structures along and/or within Easement A." [ECF 108–1] ¶ 17.

(3) Frankfield has "actually and visibly appropriately [sic] that portion of Easement A as its own." [ECF 108–1] ¶¶ 72–76. Count IV thus appears to sufficiently plead the required elements for adverse possession. Suppertime contends Frankfield cannot meet its burden to prove each element by clear and convincing evidence, but such argument goes to the merits, and it is not for the Court to determine at this juncture whether Frankfield will ultimately prevail on its claim.

### iv. Breach of Easement

Frankfield's motion also seeks to add a counterclaim of breach of easement. [ECF 108] at 1, 4. The "redlined" version of the proposed amended answer and counterclaims that accompanies the motion does not include this cause of action. *See* [ECF 108–1]. The "clean" version of the proposed pleading does, however, with there being a Count IX included that is not found in the redlined version. *See* [ECF 108–2]. Accordingly, Frankfield did not abide by Local Rule 15.1, which requires the party moving to amend a pleading to reproduce the entire pleading as amended specifically delineating the changes or additions being sought.[11] *See* LRCi 15.1. The Court suspects that Suppertime might not have addressed this issue due to its omission in the redlined version of the proposed pleading.[12]

Pursuant to LRCi 15.1, it is within the Court's authority to deny Frankfield's motion with respect to the proposed breach of easement cause of action due to Frankfield's failure to abide by this rule, regardless of whether such failure might have been inadvertent. It is further conceivable that Suppertime may wish to address this specific claim in a responsive pleading. This is reflective

---

[11] It appears that this omission may have been inadvertent, as the paragraphs of the redlined version of the proposed pleading are numbered to ninety-eight (98) and then skip to one hundred and six (106), which indicates that the page containing the missing numbers was inadvertently not scanned. *See* [ECF 108–1] at 19–20, compared to [ECF 108–2] at 17–18.

[12] The Court notes that upon its review of the redlined version of the proposed pleading, it initially believed Frankfield had failed to assert the breach of easement claim despite it having identified same in its motion. The purpose of LRCi 15.1 is to provide not only the parties, but also the Court, with the means to readily ascertain the changes or additions to the pleading that a party seeks to make. Providing a redlined version that does not include all such modifications as provided for in the "clean" version of the proposed pleading raises doubts as to the veracity of the redlined version and what other modifications might lie within said pleading.

in its opposition, as Suppertime does not identify breach of easement in the list of causes of action Frankfield seeks to assert in its motion. [ECF 109]. Accordingly, the Court will deny without prejudice the inclusion of the proposed breach of easement cause of action, with Frankfield granted leave to file a motion for the inclusion of this additional cause of action by no later than seven days of this order.

### B. Futility of the Proffered Affirmative Defenses

In its amended answer, Frankfield seeks to add the affirmative defenses of: (1) defense of property, (2) lack of intent, (3) Suppertime's own actions and/or omissions, and (4) waiver. [ECF 108–1] at 5–6. Rule 8(c) of the Federal Rules of Civil Procedure prescribes the rules for pleading affirmative defenses. *see Bello v. United Pan Am Fin. Corp.*, 2022 WL 17324441, *7 (D.N.J. Nov. 29, 2022). For an affirmative defense to be sufficiently pled under Rule 8(c), it need not contain the detailed factual allegations that a claim or a defense must. *Bello*, 2022 WL 17324441 at *7. To this end, "[w]hen challenged pursuant to a motion to amend, affirmative defenses must be capable of surviving a motion to strike under Federal Rule of Civil Procedure 12(f)." *Su v. Intra-National Home Care, LLC*, 2023 WL 5672280, *1 (W.D. Pa. Sept. 1, 2023); *see Bello*, 2022 WL 17324441 at *7; *see Boone v. Hayward Holdings Inc.*, 2024 WL 4827406, *3 (D.N.J. Nov. 18, 2024). In making this determination, the court considers whether the proposed affirmative defense is (1) "recognized as a defense to the cause of action," or (2) "whether any pled or inferable facts support the affirmative defense." *Boone*, 2024 WL 4827406 at *3.

### i. Defense of Property

Under Virgin Islands law, defense of property is found in Title 14, Section 41 of the Virgin Islands Code, which provides that

> Any person about to be injured may make resistance sufficient to prevent—

>  (1) an illegal attempt by force to take or injure property in his lawful possession; or
>
>  (2) an offense against his person or his family or some member thereof.

V.I. CODE ANN. tit. 14, § 41. This affirmative defense is a potential defense to the civil assault cause of action asserted in Count 3 of Suppertime's complaint. *See Ho v. Vu*, 2015 WL 4396062, *1 (V.I. Super. July 16, 2015). Accordingly, Frankfield shall be permitted to amend its answer to assert this defense.

### ii. Lack of Intent

As part of the requisite elements, Suppertime's civil assault cause of action requires a finding of intent, as do its proposed trespass causes of action and its proposed intentional infliction of emotional distress cause of action. As such, Frankfield shall be permitted to amend its answer to assert the defense of lack of intent.

### iii. Waiver / Suppertime's Own Actions/Omissions

In its opposition, Suppertime opposes the addition of the waiver and own actions/omissions affirmative defenses on the bases that Frankfield failed to explain in its motion why these late-asserted defenses have merit. [ECF 109] at 6–7. Notwithstanding any lack of argument, the Court finds both defenses are recognized defenses to several of the causes of action asserted and/or proposed to be asserted by Suppertime. Given the Court's present order permitting the majority of the requested causes of action to be added, coupled with the fact that detailed factual allegations are not required for affirmative defenses, the Court shall permit both to be pled.

## IV. CONCLUSION

Under Rule 15(a), leave to amend pleadings is to be freely given when justice so requires. Such is the case for the majority of the amendments sought. Any prejudice resulting from same will be minimal, as the parties are also seeking to amend the trial management order, which will

include an extension of the fact discovery deadline.[13] The only proposed causes of action found to be futile are those asserted by both parties alleging negligent infliction of emotional distress, with the Court not permitting either party to raise such claims. Finally, the Court is also denying the proposed counterclaim of breach of easement—though it does so without prejudice—as Frankfield failed to include this claim in the redlined version of its proposed pleading.

The premise considered, it is hereby

**ORDERED** that Plaintiffs' Motion [ECF 107] to Amend Complaint is **GRANTED IN PART** and **DENIED IN PART**. Specifically, Plaintiffs are permitted to file the proposed amended verified complaint as provided in [ECF 107–3] once the Negligent Infliction of Emotional Distress count has been removed. This Amended Complaint shall be identified as the "First Amended Complaint," with Plaintiffs permitted to renumber the paragraphs and counts of the pleading to allow for the removal of the Negligent Infliction of Emotional Distress count. It is further

**ORDERED** that Plaintiffs' Motion [ECF 88] is **DENIED** as **MOOT**. It is further

**ORDERED** that Defendants' Motion [ECF 108] to Amend Answer and Counterclaim is **GRANTED IN PART** and **DENIED IN PART**. Specifically, Defendants are permitted to file the proposed amended verified complaint as provided in [ECF 108–1] once the Negligent Infliction of Emotional Distress count has been removed. This amended pleading shall be identified as the "First Amended Answer, Affirmative Defenses, and Amended Counterclaims," with Defendants permitted to renumber the paragraphs and counts of the pleading to allow for the removal of the Negligent Infliction of Emotional Distress count, as well as to incorporate the redlined modifications as set forth in [ECF 108–1]. In doing so, Defendants are to remove proposed paragraph 106 as set forth in [ECF 108–1] and may insert proposed paragraph 99 as set forth in

---

[13] While Suppertime did not join in the pending motion [ECF 118] to amend trial management order filed by Frankfield, it subsequently agreed during the July 8, 2025 status conference that such an amended trial management order is needed. The Court, in turn, discussed during the conference what deadline extensions could be anticipated, with the Court set to grant in part the motion in a separate order to follow.

[ECF 108–2]. This amended pleading is **NOT** to include the breach of easement cause of action. It is further

**ORDERED** that Plaintiffs shall file their First Amended Complaint as directed herein by no later than **seven (7) days** from the date of this Order. It is further

**ORDERED** that Defendants shall file their First Amended Answer, Affirmative Defenses, and Amended Counterclaims as directed herein by no later than **seven (7) days** from the date of this Order. It is further

**ORDERED** that Defendants have **seven (7) days** from the date of this Order to file a motion that seeks to add to its counterclaims the cause of action for breach of easement as set forth in [ECF 108–2], with Plaintiffs having **seven (7) days** from the date of filing of said motion to file a response. No reply brief shall be permitted.

ENTER:

Dated: July 10, 2025

*/s/ G. Alan Teague*
G. ALAN TEAGUE
U.S. MAGISTRATE JUDGE